UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZETA GLOBAL CORP., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>MAROPOST MARKETING CLOUD, INC., a Canada corporation,<br><br>Defendant. | Case No. 1:20-cv-03951<br><br>**COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Zeta Global Corp. alleges for its complaint against Defendant Maropost Marketing Cloud, Inc., on personal information as to Zeta's own activities, and upon information and belief as to the activities of others, as follows:

### INTRODUCTION

Maropost is a technology company that provides email services to commercial clients. In October 2017, Maropost and New York-based, non-party IgnitionOne, Inc. entered into a master service agreement (the "Maropost Agreement"). After IgnitionOne became insolvent, Zeta acquired IgnitionOne's entire rights and standing under the Maropost Agreement when it purchased them out of a judicially-administered assignment for the benefit of creditors.

Maropost is bound by the Maropost Agreement, which prohibits it from soliciting any of IgnitionOne's—and now Zeta's—customers. The Maropost Agreement is clear: Maropost may not "directly or indirectly solicit or otherwise provide the Services to any customer of IgnitionOne[.]" Yet Maropost has violated the Maropost Agreement's non-solicitation prohibition by actively soliciting at least two of IgnitionOne's clients and successfully soliciting one of them.

Zeta intends to transfer the clients covered by the Maropost Agreement to Zeta's own services. Without Court intervention preventing Maropost from breaching the Maropost Agreement and soliciting Zeta's clients, Zeta will be irreparably harmed because it will lose its clients to Maropost. Zeta's reputation will be further harmed, and the damages will be difficult or

impossible to calculate.

Maropost is also infringing on at least three of Zeta's U.S. patents: 7,536,439; 8,108,475; and 10,257,672. Zeta is the lawful assignee of these U.S. patents, which are directed to technology for managing email messages and for a messaging-service application programming interface. Maropost's use of electronic tools for the creation and management of email campaigns is directly infringing on Zeta's three patents.

Zeta thus brings this lawsuit to protect its rights under the Maropost Agreement and its U.S. patents, and to recover damages and seeks preliminary and permanent injunctive relief, a declaratory judgment, and damages.

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over Zeta's patent-infringement claims brought under 28 U.S.C. §§ 1331 and 1338(a) because they arise under federal patent law, 35 U.S.C. § 271.

2. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy is over $75,000 and there is complete diversity of citizenship between the parties.

3. This Court has personal jurisdiction over Maropost because Maropost entered into a contract with a New York-based business and alternatively because Maropost has such continuous, systematic contacts with New York as to be at home here. Additionally, this Court has personal jurisdiction over Maropost as to the patent claims because Maropost concedes to New York-jurisdiction to adjudicate the patent claims and because Maropost has committed acts of patent infringement within the United States and more particularly, within this District.

4. Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c) because Maropost entered into a contract within the Southern District of New York, transacts business here, and is subject to personal jurisdiction here.

## PARTIES

5. Plaintiff Zeta Global Corp. is a Delaware Corporation with its principal place of business in New York, New York. Zeta is a data-powered marketing technology company that

helps brands acquire, grow, and retain customer relationships. In its efforts to strengthen its innovative platform and evolve as a company in the digital marketing ecosystem, Zeta strategically acquires companies in the online advertising technology space.

6. Defendant Maropost Marketing Cloud, Inc. is a Canada corporation with its principal place of business in Toronto, Ontario, Canada. Among other services, Maropost provides email marketing software for marketers.

## FACTUAL ALLEGATIONS

**A. IgnitionOne and Maropost entered into an agreement for Maropost to provide email marketing services and access to a full-service, workflow email platform.**

7. Leading up to its sale in 2019, IgnitionOne, Inc. was a global technology and services leader that enabled marketers to find, value, and engage with customers in order to maximize digital marketing results. IgnitionOne was one of the largest independent marketing technology companies in the world.

8. On October 2, 2017, IgnitionOne entered into a Master Service Agreement with Maropost Marketing Cloud, Inc. (the "Maropost Agreement"). The Maropost Agreement is attached as Attachment A and incorporated by reference.

9. Under the Maropost Agreement, Maropost agreed to provide a number of services to IgnitionOne and clients IgnitionOne located, including access to a full-service workflow email platform that provides outbound email marketing services.

10. IgnitionOne was allowed to sublicense Maropost's services to clients IgnitionOne located. IgnitionOne agreed to remit fees to Maropost.

11. IgnitionOne complied with all required terms of the Maropost Agreement.

**B. The Maropost Agreement requires Maropost to provide transition services for a 120-day period following IgnitionOne's notice of non-renewal.**

12. The Maropost Agreement provided for a transition period at the end of its term. The transition services obligation is absolute. There are no conditions placed on it. Specifically, Section 13 of the Maropost Agreement provides:

> Upon IgnitionOne's request, during the Term and for the 120-day period

thereafter, Maropost shall work diligently and professionally to help IgnitionOne transfer the Services (at no additional cost to IgnitionOne), to either IgnitionOne or another third party identified by IgnitionOne, including helping to make available data in a format reasonably requested by IgnitionOne.

13. Section 13 of the Maropost Agreement provides that the 120-day period begins to run once the Maropost Agreement is terminated.

14. On September 26, 2019, IgnitionOne gave written notice to Maropost that it would not renew the Maropost Agreement and that the Maropost Agreement would terminate effective October 31, 2019. IgnitionOne requested transition services as required by the Maropost Agreement.

15. Based on the termination date of October 31, 2019, Maropost was required to provide transition services to IgnitionOne and its customers through February 28, 2020.

**C. Zeta acquired Ignition One's interest in the Maropost Agreement.**

16. The Maropost Agreement provides at Section 14 that "either party may assign this Agreement in connection with a sale or transfer of all of such party's assets."

17. Further, the Maropost Agreement prevents Maropost from unreasonably withholding consent or delaying consent to even a partial transfer.

18. On November 1, 2019, IgnitionOne filed for a general assignment for the benefit of creditors ("General Assignment").

19. Pursuant to the General Assignment, IgnitionOne transferred all of its assets, including the Maropost Agreement, to Asset Recovery Associates, LLC ("Asset Recovery").

20. Asset Recovery thus became the successor-in-interest to IgnitionOne and to the Maropost Agreement.

21. On November 19, 2019, Asset Recovery entered into an Asset Purchase Agreement (the "Asset Purchase Agreement") with Zeta.

22. Pursuant to the terms of the Asset Purchase Agreement, Asset Recovery agreed to sell to Zeta IgnitionOne's interest in the Maropost Agreement.

23. Asset Recovery and Zeta have also entered into an Assignment and Assumption Agreement (the "Assignment Agreement"), effective November 19, 2019. The Assignment Agreement is attached as Attachment B and incorporated by reference.

24. Under the Assignment Agreement, Asset Recovery specifically assigns to Zeta all IgnitionOne's rights, title, and interest in and to the Maropost Agreement.

25. Zeta obtained the Assignment Agreement to ensure its acquisition of rights under the Maropost Agreement was unequivocally clear.

D. **Maropost honored Zeta's assumption of the Maropost Agreement by providing transition services, receiving payment for those services, and negotiating for amendments.**

26. Maropost honored Zeta's assumption of the Maropost Agreement by providing transition services to Zeta and Zeta's clients through the beginning of March 2020, for which it received payment from Zeta.

27. Maropost also negotiated with Zeta for amended terms to the Maropost Agreement.

E. **Maropost is interfering with Zeta's customer relationships in violation of the Maropost Agreement.**

28. The Maropost Agreement provides at Section 8:

> **Non-Solicitation of Customers and Employees.** During the Term and for the one-year period thereafter, Maropost agrees not to: (a) directly or indirectly solicit or otherwise provide the Services to any customer of IgnitionOne that it is presently providing Services to or that it has provided Services to in the past six (6) months[.]

29. Zeta acquired IgnitionOne's clients through its purchase of IgnitionOne's assets. Zeta offers a suite of services that includes and expands beyond Maropost's offerings. Zeta intends to use its relationship with these new clients to expand business with them using Zeta's full suite of services.

30. Despite the Maropost Agreement's clear prohibition on soliciting Zeta's acquired clients, Maropost has been actively doing so.

31. Zeta has learned that Maropost contacted two clients covered by the Maropost Agreement and offered incentives for them to stop working with Zeta and instead switch to Maropost.

32. One client, Dollar General, succumbed to the pressure and informed Zeta that it was switching. Dollar General is a multi-million-dollar business and the value of the switch is in the millions of dollars, even limited to the services Maropost provided, let alone Zeta's expanded suite of marketing services.

33. A second client, Sundance, informed Zeta that Maropost had solicited Sundance in an attempt to convince it to switch to Maropost's platform and services.

34. Despite efforts by Zeta to resolve the dispute, Maropost has refused to comply with the Maropost Agreement.

**F. Zeta has been damaged and will be further damaged if Maropost's refusal to honor the Maropost Agreement and interference with Zeta's customers continues.**

35. Zeta intends to use its relationship with these new clients to expand business with them using Zeta's full suite of services.

36. These are all early client relationships—Zeta does not yet have a track record with each client.

37. Damages from the disruption of these client relationships would be difficult to calculate because Zeta does not have a payment history with these clients and does not know which other Zeta services the clients would select if the clients had not been solicited.

38. Additionally, it will be difficult or impossible to calculate the harm to Zeta's reputation in the overall digital marketing community.

39. Specifically, reliability and consistency are key attributes for success in digital marketing.

40. The outside world would not know that Maropost breached a contract and offered incentives to switch; it would only know that Zeta lost clients shortly after acquiring them.

41. In the fast-paced digital world, Zeta would not have a chance to explain the circumstances and will instead face significant risk that its overall volume of business—over and above the clients Maropost unfairly poached—would suffer.

42. Thus, if Maropost is allowed to breach the Maropost Agreement and solicit Zeta's clients, Zeta's business reputation would be catastrophically harmed, both with these clients and the broader marketing community.

**G. Maropost is infringing on Zeta's '439 Patent for managing failure messages for email messages.**

43. United States Patent Number 7,536,439 ("the '439 Patent"), entitled Method and Apparatus for Categorizing Failure Messages that Result from Email Messages, was duly and legally issued on May 19, 2009. Attached as Attachment C is a true and correct copy of the '439 Patent.

44. On April 17, 2017 the '439 Patent was assigned to Zeta, which assignment was recorded with the United States Patent & Trademark office on April 17, 2017.

45. Claim 1 of the '439 Patent claims a method in a computer system for managing failure messages for email messages, the method comprising: receiving a failure message from an Internet service provider ("ISP") when the ISP is unable to deliver an email message to an email address associated with the ISP; determining, for the failure message, a failure type based on a determined rule for classifying the failure message; and determining whether the email address should be marked as invalid based upon the determined failure type and the ISP associated with the email address.

46. As found in Claims 2 and 7, the method of Claim 1 further comprises storing information for the email address based on the failure type determined, and wherein the failure message comprises a failure message sent by the ISP.

47. Claim 11 of the '439 Patent claims a method in a computer system for categorizing failure messages, the method comprising: receiving a failure message from an Internet Service Provider ("ISP") when the ISP is unable to deliver an email message to an email address associated with the ISP; determining, for the failure message, a failure type; and determining

whether the email address should be marked as invalid based upon the determined failure type and the corresponding ISP associated with the email address.

48. Claim 12 of the '439 Patent claims the method of Claim 11, further comprising storing information for the email address based on the failure type determined.

49. Upon information and belief, Maropost has and continues to infringe Claim 1 the '439 Patent by performing email campaigns on a computer. Some of the sent emails will fail delivery. When an email fails delivery, the email bounces; at which point Maropost receives a failure message from the recipient's mail server (ISP) indicating the failure. Maropost determines if a failed message is a soft bounce or a hard bounce, as Maropost handles soft and hard bounces differently—soft bounces are deferred while hard bounces are added to a do-not-mail list ("DNM"). Maropost then determines if email addresses are invalid based on a hard bounce versus a soft bounce and are added to the DNM. Soft bounce (valid email address that is blocked) is ISP dependent and deferred. Accordingly, Maropost determines whether an email should be marked as valid or invalid based on failure type and ISP.

50. Upon information and belief, Maropost has and continues to infringe Claim 2 the '439 Patent by generating reports about bounced emails, including information for the email address.

51. Upon information and belief, Maropost has and continues to infringe Claim 7 the '439 Patent by generating reports showing complaints generated and sent by the ISP.

52. Upon information and belief, Maropost has and continues to infringe Claim 11 the '439 Patent by performing email campaigns on a computer. Some of the sent emails will fail delivery. When an email fails delivery, the email bounces; at which point Maropost receives a failure message from the recipient's mail server (ISP) indicating the failure. Maropost determines if a failed message is a soft bounce or a hard bounce, as Maropost handles soft and hard bounces differently—soft bounces are deferred while hard bounces are added to a do-not-mail list ("DNM"). Maropost then determines if email addresses are invalid based on a hard bounce versus a soft bounce and are added to the DNM. Soft bounce (valid email address that is

blocked) is ISP dependent and deferred. Accordingly, Maropost determines whether an email should be marked as valid or invalid based on failure type and ISP.

53. Upon information and belief, Maropost has and continues to infringe Claim 12 the '439 Patent by generating reports about bounced emails, including information for the email address.

54. Zeta has at no time either expressly or impliedly licensed Maropost to practice the '439 Patent.

55. Maropost's acts of infringement have been willful and in disregard of Zeta's rights under the '439 Patent, and without any reasonable basis for believing that they had a right to engage in the infringing product.

**H.  Maropost is infringing on Zeta's '475 Patent for managing failure messages for email messages.**

56. United States Patent Number 8,108,475 ("the '475 Patent"), entitled Method and Apparatus for Categorizing Failure Messages that Result from Email Messages, was duly and legally issued on January 31, 2012. Attached as Attachment D is a true and correct copy of the '475 Patent.

57. On April 17, 2017 the '475 Patent was assigned to Zeta, which assignment was recorded with the United States Patent & Trademark office on April 17, 2017.

58. Claim 1 claims a computer-implemented method for managing failure messages for email messages, the method comprising: receiving, in a computer, a failure message from an Internet service provider ("ISP") as a result of a failure by the ISP to deliver an email message to an email address associated with the ISP; classifying, using a processor of the computer, a failure type of the failure using the failure message; and determining, using the processor, whether the email address is invalid based upon the failure type and based upon the associated ISP.

59. Claim 10 claims the method of Claim 1, wherein the failure message comprises a failure message sent by the ISP.

60. Claim 11 claims the method of Claim 1, further comprising storing information for the email address based on the failure type.

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

61. Claim 13 claims a system for managing failure messages for email messages, the system comprising: receive a failure message from an Internet service provider (ISP) as a result of a failure by the ISP to deliver an email message to an email address associated with the ISP; classify a failure type of the failure using the failure message; and determine whether the email address is invalid based upon the failure type and based upon the associated ISP.

62. Claim 16 claims a non-transitory computer-readable storage medium storing instructions for causing one or more computers to perform operations comprising: receiving, in a computer, a failure message from an Internet service provider (ISP) as a result of a failure by the ISP to deliver an email message to an email address associated with the ISP; classifying, using a processor operatively coupled to the computer, a failure type of the failure using the failure message; and determining, using the processor, whether the email address is invalid based upon the failure type and based upon the associated ISP.

63. Upon information and belief, Maropost has and continues to infringe Claims 1, 13, and 16 of the '475 Patent by performing email campaigns on a computer. Some of the sent emails will fail delivery. When an email fails delivery, the email bounces; at which point Maropost receives a failure message from the recipient's mail server (ISP) indicating the failure. Maropost determines if a failed message is a soft bounce or a hard bounce, as Maropost handles soft and hard bounces differently—soft bounces are deferred while hard bounces are added to a do-not-mail list ("DNM"). Maropost then determines if email addresses are invalid based on a hard bounce versus a soft bounce and are added to the DNM. Soft bounce (valid email address that is blocked) is ISP dependent and deferred. Accordingly, Maropost determines whether an email should be marked as valid or invalid based on failure type and ISP.

64. Upon information and belief, Maropost has and continues to infringe Claim 10 of the '475 Patent by generating reports showing complaints generated and sent by the ISP for failed delivery. Further, email bounces are indicated by failure messages sent by the recipient's mail server (ISP).

65. Upon information and belief, Maropost has and continues to infringe Claim 11 of the '475 Patent by generating reports about bounced emails, including information for the email

address. The reports include soft and hard bounces. Different information is stored based on failure type.

66. Zeta has at no time either expressly or impliedly licensed Maropost to practice the '475 Patent.

67. Maropost's acts of infringement have been willful and in disregard of Zeta's rights under the '475 Patent, and without any reasonable basis for believing that they had a right to engage in the infringing product.

## I. Maropost is infringing on Zeta's '672 Patent for a messaging service application programming interface.

68. United States Patent Number 10,257,672 ("the '672 Patent"), entitled Messaging Service Application Programming Interface, was duly and legally issued on April 9, 2019. Attached as Attachment E is a true and correct copy of the '672 Patent.

69. On April 17, 2017 the '672 Patent was assigned to Zeta, which assignment was recorded with the United States Patent & Trademark office on April 17, 2017.

70. Claim 1 claims a system, comprising: one or more processors and executable instructions accessible on a computer-readable medium that, when executed, cause the one or more processors to perform operations comprising: receiving, from a client application executing on a client device, a message transmission request including a number assigned to a recipient device; adding the message transmission request to an outbound queue based on determining the message transmission request is valid; causing transmission of a message to the recipient device based on the message transmission request being included in the outbound queue; obtaining status information specifying a status of transmission of the message, the status information including an indication of successful transmission of the message; and storing a record of the message transmission request responsive to the causing the transmission of the message, the storing the record including storing the message and the indication of successful transmission of the message.

71. Claim 6 claims a method, comprising: receiving, from a client application executing on a client device, a message transmission request including a number assigned to a recipient

device; adding the message transmission request to an outbound queue based on determining the message transmission request is valid; causing transmission of a message to the recipient device based on the message transmission request being included in the outbound queue; obtaining status information specifying a status of transmission of the message, the status information including an indication of successful transmission of the message; and storing a record of the message transmission request responsive to the causing the transmission of the message, the storing the record including storing the message and the indication of successful transmission of the message.

72. Claim 12 a non-transitory machine-readable medium comprising instructions which, when executed by a machine, cause the machine to perform operations comprising, at least: receiving, from a client application executing on a client device, a message transmission request including a number assigned to a recipient device; adding the message transmission request to an outbound queue based on determining the message transmission request is valid; causing transmission of a message to the recipient device based on the message transmission request being included in the outbound queue; obtaining status information specifying a status of transmission of the message, the status information including an indication of successful transmission of the message; and storing a record of the message transmission request responsive to the causing the transmission of the message, the storing the record including storing the message and the indication of successful transmission of the message.

73. Upon information and belief, Maropost has and continues to infringe Claims 1, 6, and 12 of the '672 Patent by operating a system that includes one or more processors to perform operations on a client application, wherein the Maropost system receives a client-generated email campaign, including selecting lists of addresses that include a number assigned to the recipient device. Maropost provides an example list of contact to upload that includes an email address and a phone number associated with the email address. The phone number will often be assigned a mobile device that receives emails. Adding a message transmission to an outbound queue is inherent to all Maropost message transmission systems. Determining the message is valid includes determining that the email address is not a suppressed email address, such as a DNM

list. Maropost then sends campaign emails and obtains status information for each email sent, including successful transmission.

74. Upon information and belief, Maropost has and continues to infringe Claims 1, 6, and 12 of the '672 Patent by additionally operating a system that inherently includes processors with executable instructions, as the Maropost system includes a website. The Maropost Mobile SDK for Android is installed on a client device, downloaded from the Maropost website. Maropost push enables clients to send push messages to mobile devices that have installed the client's app. The request to send a push message can include device tokens, which are iOS or Android device IDs that include numbers. Transmission systems inherently include outbound queues. Determining if a push message is valid includes determining if the message was already sent and should not be sent a second time. Maropost will check Message Limit to see if the mobile app user already received the set limit. If not, the message can be added to the queue to be sent. The push message is then sent as indicated by mobile app analytics. Maropost obtains status information indicating successful transmission of the push message. Maropost then stores a record of the message transmission request, including the message and indication of successful transmission as this data is available in Mobile Campaign Reports.

75. Zeta has at no time either expressly or impliedly licensed Maropost to practice the '672 Patent.

76. Maropost's acts of infringement have been willful and in disregard of Zeta's rights under the '672 Patent, and without any reasonable basis for believing that they had a right to engage in the infringing product.

## FIRST CAUSE OF ACTION

### Breach of Contract

77. Zeta incorporates the allegations previously set forth as though fully set forth herein.

78. The Maropost Agreement is a valid contract.

79. Zeta is the successor-in-interest to IgnitionOne and entitled to enforce the Maropost Agreement.

80. IgnitionOne and Zeta performed all obligations required by the Maropost Agreement.

81. Maropost breached its obligations by soliciting Zeta's (formerly IgnitionOne's) clients.

82. Zeta has been damaged.

## SECOND CAUSE OF ACTION

### Tortious Interference with a Contractual Relationship

83. Zeta incorporates the allegations previously set forth as though fully set forth herein.

84. Maropost interfered with Zeta's contractual relationships.

85. The interference was by unlawful means.

86. Zeta was damaged.

## THIRD CAUSE OF ACTION

### Declaratory Action

87. Zeta incorporates the allegations previously set forth as though fully set forth herein.

88. There is a substantial controversy between Zeta and Maropost as to whether Maropost must abide by the Maropost Agreement's terms.

89. Zeta and Maropost have adverse legal interests.

90. The conflict is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## FOURTH CAUSE OF ACTION

### Patent Infringement of US 7,536,439

91. Zeta incorporates the allegations previously set forth as though fully set forth herein.

92. Maropost has been and is infringing—literal infringement and/or infringement under the doctrine of equivalents—the '439 Patent by making, using, selling, offering for sale, or leasing in the United States its email management system, in violation of 35 U.S.C. § 271(a).

93. Maropost's infringement has been, and continues to be knowing, intentional, and willful.

94. Maropost's acts of infringement of the '439 Patent has caused and will continue to cause Zeta damages for which it is entitled to compensation pursuant to 35 U.S.C. § 284.

95. Maropost's acts of infringement of the '439 Patent has caused and will continue to cause Zeta immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Zeta has no adequate remedy at law.

96. This case is exceptional and, therefore, Zeta is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

## FIFTH CAUSE OF ACTION

### Patent Infringement of US 8,108,475

97. Zeta incorporates the allegations previously set forth as though fully set forth herein.

98. Maropost has been and is infringing—literal infringement and/or infringement under the doctrine of equivalents—the '475 Patent by making, using, selling, offering for sale, or leasing in the United States its email management system, in violation of 35 U.S.C. § 271(a).

99. Maropost's infringement has been, and continues to be knowing, intentional, and willful.

100. Maropost's acts of infringement of the '475 Patent has caused and will continue to cause Zeta damages for which it is entitled to compensation pursuant to 35 U.S.C. § 284.

101. Maropost's acts of infringement of the '475 Patent has caused and will continue to cause Zeta immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Zeta has no adequate remedy at law.

102. This case is exceptional and, therefore, Zeta is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

## SIXTH CAUSE OF ACTION

### Patent Infringement of US 10,257,672

103. Zeta incorporates the allegations previously set forth as though fully set forth herein.

104. Maropost has been and is infringing—literal infringement and/or infringement under the doctrine of equivalents—the '672 Patent by making, using, selling, offering for sale, or leasing in the United States its email management system, in violation of 35 U.S.C. § 271(a).

105. Maropost's infringement has been, and continues to be knowing, intentional, and willful.

106. Maropost's acts of infringement of the '672 Patent has caused and will continue to cause Zeta damages for which it is entitled to compensation pursuant to 35 U.S.C. § 284.

107. Maropost's acts of infringement of the '672 Patent has caused and will continue to cause Zeta immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Zeta has no adequate remedy at law.

108. This case is exceptional and, therefore, Zeta is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**PRAYER FOR RELIEF**

Wherefore, Zeta respectfully requests that the Court grant damages and other relief against Maropost, and judgment as follows:

1. Preliminary and permanent injunctive relief.

2. Damages in an amount to be determined at trial but exceeding $75,000.

3. A declaratory judgment that Maropost must abide by the terms of the Maropost Agreement.

4. A preliminary injunction prohibiting further infringement of each of the '439, '475, and '672 Patents by Maropost, its agents, employees, representatives, successors and assigns, and those acting in privity or in concert with them.

5. A permanent injunction prohibiting further infringement of each of the '439, '475, and '672 Patents by Maropost, its agents, employees, representatives, successors and assigns, and those acting in privity or in concert with them.

6. An award of actual damages against Maropost for damages arising from the infringement of each of the '439, '475, and '672 Patents.

7. An award of damages against Zeta for pre-judgment and post-judgment interest on the damages awarded, including an award of prejudgment interest, pursuant to 35 U.S.C. § 284, from the date of each act of infringement of the '439, '475, and '672 Patents to the day a damages judgment is entered and a further award of post-judgment interest, pursuant to 28 U.S.C. § 1961, continuing until such judgment is paid, at the maximum rate allowed by law.

8. In the event a final injunction is not granted, a compulsory ongoing royalty.

9. An award of Zeta's costs of suit, including the costs of experts and reasonable attorneys' fees as permitted by law.

10. An award of pre- and post-judgment interest.

11. Such other relief as the Court may deem just and equitable.

## JURY DEMAND

Under Rule 38(b) of the Federal Rules of Civil Procedure, Zeta demands a trial by jury of all issues presented in this Complaint which are so triable.

Dated: May 21, 2020

Respectfully submitted,

NEWMAN DU WORS LLP

*/s/ John Du Wors*

John Du Wors, State Bar No. 5047048
2101 Fourth Avenue, Suite 1500
Seattle, WA 98121
Telephone:     (206) 274-2800
Facsimile:     (206) 274-2801
Email:     *john@newmanlaw.com*

Counsel for Plaintiff
Zeta Global Corp.