UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
ZETA GLOBAL CORP.,                              :
                              Plaintiff,      :
                                                     :           20 Civ. 3951 (LGS)
                -against-               :
                                                   :           <u>OPINION & ORDER</u>
MAROPOST MARKETING CLOUD, INC.,   :
                                  Defendant.  :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Zeta Global Corporation ("Zeta Global") alleges that Defendant Maropost Marketing Cloud, Inc. ("Maropost") infringes U.S. Patent Nos. 7,536,439 ("Methods and apparatus for categorizing failure messages that result from email messages") (the "'439 Patent") and 8,108,475 ("Methods and apparatus for categorizing failure messages that result from email messages") (the "'475 Patent"). The parties have presented their proposed constructions of two claim terms -- "deliver" and "failure type" -- pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). For the reasons set forth below (1) "deliver" is construed as "change of control" and (2) "failure type" is construed as "a classification of a failure message." Neither disputed term is indefinite as Defendant claims. The parties' submissions also put the meaning of the term "failure message" into controversy. That term is indefinite in the '439 Patent because the plain language of the claims assigns it contradictory meanings.

**I.    BACKGROUND**

       Plaintiff and Defendant are online marketing companies that send promotional emails. The '439 and '475 Patents (the "Patents") claim methods by which a sender of emails can classify failure messages received in response to failures in the process by which an email is

delivered to a recipient. For example, if an Internet Service Provider ("ISP") refuses to deliver an email because it identifies the sender as a spammer, it may send a failure message to the sender. The sender may then apply a set of rules to the failure message to categorize it as a particular failure type. For instance, the sender might classify the error message as "Spam," which might determine further action such as removing the email address from a recipient list.

The '475 Patent is a continuation of the '439 Patent, meaning that the two patents share the same specification but make different claims. The parties agree that claim 1 of each patent is representative. Claim 1 of the '439 Patent reads:

> 1. A method in a computer system for managing failure messages for email messages, the method comprising:
>
> > receiving a failure message from an Internet service provider (ISP) when the ISP is unable to <u>deliver</u> an email message to an email address associated with the ISP;
> >
> > determining, for the failure message, a <u>failure type</u> based on a determined rule for classifying the failure message; and
> >
> > determining whether the email address should be marked as invalid based upon the determined <u>failure type</u> and the ISP associated with the email address. (emphases added)

Claim 1 of the '475 Patent reads:

> 1. A computer-implemented method for managing failure messages for email messages, the method comprising:
>
> > receiving, in a computer, a failure message from an Internet service provider (ISP) as a result of a failure by the ISP to <u>deliver</u> an email message to an email address associated with the ISP;
> >
> > classifying, using a processor of the computer, a <u>failure type</u> of the failure using the failure message; and
> >
> > determining, using the processor, whether the email address is invalid based upon the <u>failure type</u> and based upon the associated ISP. (emphases added)

2

## II. STANDARD

### A. Claim Construction

"A district court's duty at the claim construction stage is . . . to resolve a dispute about claim scope that has been raised by the parties." *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016). "This means that, as to claim coverage, the district court must instruct the jury on the meanings to be attributed to all disputed terms used in the claims in suit so that the jury will be able to 'intelligently determine the questions presented.'" *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004) (citation omitted); *accord Eon Corp. IP holdings*, 815 F.3d at 1319. While "district courts are not . . . required to construe *every* limitation present in patent's asserted claims . . . [w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); *accord Green Pet Shop Enterprises, LLC v. Eur. Home Design, LLC*, No. 17 Civ. 6238, 2019 WL 1172069, at *4 (S.D.N.Y. Mar. 13, 2019) ("When the parties raise an actual dispute regarding the proper scope of [the] claims, the court, not the jury, must resolve that dispute." (internal quotation marks omitted)). In the event "the parties [choose] to treat [certain] terms across [separate] patents as rising and falling together" the Court need not "separately address [every] Patent." *X2Y Attenuators, LLC v. Int'l. Trade Comm'n*, 757 F.3d 1358, 1363 n.2 (Fed. Cir. 2014); *accord Kewazinga Corp. v. Microsoft Corp.*, No. 18 Civ. 4500, 2019 WL 3423352, at *2 (S.D.N.Y. July 29, 2019).

During claim construction, the court looks "first to intrinsic evidence, and then, if necessary, to the extrinsic evidence." *TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 785 (Fed. Cir. 2019) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317-19 (Fed. Cir. 2005)).

The intrinsic record comprises the claims, the specification and the prosecution history. *Id*. Claim terms are presumed to be given their ordinary and customary meaning, as understood by a person of ordinary skill in the art ("POSITA") as of the patent's priority date, considering the entirety of the patent. *Network-1 Techs., Inc. v. Hewlett-Packard Co.*, 981 F.3d 1015, 1022 (Fed. Cir. 2020). "When the ordinary meaning of the claim language is 'readily apparent even to lay judges,' claim construction 'involves little more than the application of the widely accepted meaning of commonly understood words.'" *Green Pet Shop Enter.*, 2019 WL 1172069, at *4 (quoting *O2 Micro*, 521 F.3d at 1360)).

If a claim term does not have an ordinary meaning, it must "be read in view of the specification." *Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 796 (Fed. Cir. 2019). "[T]he specification is the single best guide to the meaning of a disputed term." *Network-1*, 981 F.3d at 1022. In addition to the specification, "a court should [] consider the patent's prosecution history, if it is in evidence." *Cont'l Circuits LLC*, 915 F.3d at 796 (internal quotation marks omitted). "Like the specification, the prosecution history provides evidence of how the [United States Patent and Trademark Office ('PTO')] and the inventor understood the patent." *Id.* (alteration in original). "Accordingly, the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* (internal quotation marks omitted).

Secondary to the intrinsic evidence is the extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317. "[W]hile extrinsic evidence can shed useful light on the relevant art . . . it is less significant than the intrinsic record in

4

determining the legally operative meaning of disputed claim language." *Cont'l Circuits LLC*, 915 F.3d at 799 (internal quotation marks omitted).

### B. Claim Indefiniteness

Patent claims must "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112. If a term is indefinite, then the claims in which it appears are invalid. *See Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1368 (Fed. Cir. 2021). Definiteness is determined from the point of view of a POSITA at the time of filing and is resolved with reference to the patent's specification and prosecution history. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 908 (2014); *accord Focus Prod. Grp. Int'l, LLC v. Kartri Sales Co., Inc.*, 454 F. Supp. 3d 229, 245 (S.D.N.Y. 2020), *reconsideration denied*, No. 15 Civ. 10154, 2020 WL 2115344 (S.D.N.Y. May 3, 2020). To meet the definiteness requirement, "a patent's claims, viewed in light of the specification and prosecution history, [must] inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 572 U.S. at 908; *accord Synchronoss*, 987 F.3d at 1366 (Fed. Cir. 2021). "The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable." *Nautilus*, 572 U.S. at 910. "Indefiniteness must be proven by clear and convincing evidence." *VR Optics, LLC v. Peloton Interactive, Inc.*, 345 F. Supp. 3d 394, 398 (S.D.N.Y. 2018) (citing *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017)).

## III. DISCUSSION

### A. Claim Construction

The parties do not dispute that for purposes of the Patents, a POSITA is (1) an individual familiar with software, mechanisms and processes for sending commercial emails, (2) who has a

reasonable understanding of, and experience with, computer databases and (3) can determine mechanisms for managing failure messages.

### 1. "Deliver"

The parties agree that, at minimum, "deliver" means "change of control." The claims reference an ISP that fails to deliver an email message to an email address: (1) Claim 1 of the '439 Patent describes "receiving a failure message from an Internet service provider (ISP) when the ISP is unable to deliver an email message to an email address associated with the ISP" and (2) Claim 1 of the '475 Patent describes "receiving, in a computer, a failure message from an Internet service provider (ISP) as a result of a failure by the ISP to deliver an email message to an email address associated with the ISP." It is plain from the claim language that "deliver" is used in the ordinary and familiar sense -- as a change of control over an email message between two entities. Accordingly, "deliver" is construed to mean "change of control."

Because the claim language is clear, it is not necessary to construe "deliver" in light of the specification. Even if it were, the specification supports construing "deliver" as "change of control," because the specification does not set forth a particularized or idiosyncratic definition for "deliver," but instead consistently refers to email delivery in a manner analogous to the delivery of any other item -- as a change of control between two parties with respect to the item being delivered. For instance, the specification states that one type of failed delivery is when control of the email message is not transferred from the recipient's ISP to the recipient. The specification also states that delivery may not occur due to busy email servers, blocked email addresses, bad domains or domain name server configuration errors. In each of these examples of failed delivery, control over the email is not transferred to the intended recipient. Finally,

although the prosecution history may also illuminate the meaning of claim terms, the Patents' prosecution histories do not address the meaning of "deliver."

In response, Defendant proposes a narrower technical definition, citing expert testimony that "deliver" should be construed as a specific type of change of control -- "the transfer of a message from [a computerized mail handling transport service used to route email across the Internet] to a recipient's inbox or other recipient resource." It is unnecessary to reach this extrinsic evidence because the plain language of the claims (1) is clear and (2) does not suggest any specialized technical meaning.

2. "Failure Type"

Plaintiff claims that "failure type" should be given its plain and ordinary meaning, because "[t]he term simply refers to distinguishing between different failure messages and classifying them." Defendant forwards no construction and contends the term is indefinite; that argument is unpersuasive, as discussed below.

"Failure type" is construed as "a classification of a failure message." The Patents claim methods and apparatuses to classify into "failure types" various failure messages generated in the process of sending emails. Claim 1 of the '439 Patent refers to "determining, for the failure message, a failure type based on a determined rule for *classifying* the failure message" (emphasis added), and Claim 1 of the '475 Patent refers to "*classifying*, using a processor of the computer, a failure type of the failure using the failure message" (emphasis added). The plain language of these claims shows that a "failure type" is "a classification of a failure message," where the failure message is received from an ISP and processed according to classification rules. This construction is supported by the specification, which states that embodiments of the claimed inventions contain rules "that are used to categorize failure messages in a plurality of failure

types" and then take action "based on the failure type." Similarly, the specification notes that another embodiment of the invention consists of "determining, for the failure message, a failure type in [a] plurality of failure types." Table I of the specification lists examples of "failure types that may be used to classify failure message from ISPs," such as "Server Down," "Spam," "Virus," "Bad Domain" or "Out-of-Office." In light of the plain language of the claims and the specification, "failure type" is construed as "a classification of a failure message."

### B. Indefiniteness

#### 1. "Deliver"

"Deliver" is not indefinite if construed to mean a "change of control" because, as construed, the Patents' claims, specification and prosecution histories provide reasonable certainty as to the scope of this term to a POSITA at the time of the invention. *Nautilus*, 572 at 908. Specifically, the Patents claim (1) methods and apparatuses for applying rules to failure messages received from ISPs in connection with email transmission so as to classify those messages into failure types and (2) taking action based on the determined failure type. The Patents' claims and specification make clear that this action may be taken on failure messages generated before or after delivery of the message -- that is, before or after control of the message is transferred between two entities in the email delivery process. For instance, Claim 1 of each Patent covers this classification/action procedure for failure messages arising when the ISP is unable to deliver the email to the intended recipient -- that is, before successful delivery to the recipient. Claim 6 of the '439 Patent and Claim 9 of the '475 Patent cover the case where classification/action occurs after the email message is delivered to the recipient. Construing "deliver" as "change of control" introduces no ambiguity as to the scope of the claimed

8

invention, which covers actions taken both pre- and post-delivery to the intended recipient. "Deliver" is not indefinite.

In response, Defendant argues that "deliver" must be indefinite because Claim 1 of the Patents refers to failure messages generated when an email is not delivered to an intended recipient, while Claim 6 of the '439 Patent and Claim 9 of the '475 Patent require such failure messages to be generated after successful delivery. According to Defendant, this difference means that "deliver" has no readily ascertainable meaning, as the claims and specification "require failure messages to be generated both before and, critically, after delivery of the email message" (internal quotation marks and emphasis removed). That the Patents claim functionality relating to "failure messages" generated due to both failed delivery and failures after delivery does not render the term "deliver" indefinite, particularly as absolute certainty is not required in determining claim meaning. *Nautilus*, 572 U.S. at 910.

### 2. "Failure Message"

The controversy Defendant identifies involves the term "failure message," which is indefinite in the '439 Patent. The claims of the '439 Patent assign this term opposite meanings from which no POSITA could readily determine the scope of what is claimed. Claim 1 of the '439 Patent refers to a "failure message" that is generated "when the ISP is *unable to deliver* an email message to an email address associated with the ISP" (emphasis added). By the claim's plain terms, such failure messages are the result of unsuccessful delivery from the ISP to the intended recipient. Claim 6 of the '439 Patent claims "[t]he method of claim 1, wherein the failure message comprises a failure message that is determined *after* delivery of the email message" (emphasis added). At oral argument, the parties did not dispute that the term "determined" in Claim 6 means "created." When properly read as incorporating Claim 1, Claim

9

6 thus claims a failure message (1) received by the sender when the ISP is *unable* to deliver an email to a recipient (2) *and* is created only *after* the email is delivered to the recipient.[1] This combined claim language is contradictory and nonsensical, and no POSITA reading the '439 Patent would understand the term "failure message" as limited by when it is received -- that is, simultaneously after delivery and upon non-delivery.[2]

In response, Plaintiff first argues that the parties identified only "deliver" and "failure type" as terms requiring construction. This argument is unpersuasive because the role of the district court is to construe all terms whose meaning or scope is in controversy, *see O2 Micro*, 521 F.3d at 1360; *accord Green Pet Shop Enterprises*, 2019 WL 1172069, at *4, so that the jury can intelligently determine infringement, *see Sulzer Textil A.G.*, 358 F.3d at 1366. As described above, the parties' arguments create a controversy regarding the meaning of "failure message."

---

[1] At oral argument, the parties briefly discussed a potential scenario involving an email that fails to be delivered by the ISP, causing conditions for a failure message to be met. Subsequently, the email is successfully delivered to the recipient, at which point the failure message is created and then sent back to the sender. There are two issues with this scenario. The first is that Claim 1 refers to the sender "receiving" the failure message "when the ISP is unable to deliver" the message, not after the ISP successfully delivers a message that initially failed delivery. Second, the Patents do not provide any support for functionality whereby a failure message corresponding to an initial failed delivery is created after a subsequent successful delivery. Nor do the parties provide any evidence that a POSITA would reasonably understand the claims to have such a non-intuitive meaning.

[2] "Failure message" is not indefinite in the '475 Patent. Claim 1 of the '475 Patent covers "receiving . . . a failure message . . . as a result of a failure by the ISP to deliver an email message to an email address associated with the ISP." Claim 9 covers "[t]he method of claim 1, wherein the failure message comprises a failure message that is *classified* after delivery of the email message" (emphasis added). As the parties acknowledged at oral argument, an email may be successfully delivered after an initial delivery failure resulted in generation of a failure message. It is possible that a subsequent successful delivery *by the ISP* occurs before the failure message is classified *by the sender* and assigned a failure type. By contrast, Claims 1 and 6 of the '439 Patent posit a failure message *due to* a failed email delivery that is only created *after* the email is successfully delivered. That contradiction is not present in the '475 Patent.

Plaintiff also argues that the claims are presumed valid, and thus that Defendant must demonstrate indefiniteness by clear and convincing evidence. While these legal assertions are correct, the clear and convincing standard is satisfied here because the claims clearly assign "failure message" facially incompatible meanings.

### 3. "Failure Type"

"Failure type" is not indefinite when construed to mean "a classification of a failure message." As described above, the Patents (1) claim functionality whereby rules are applied to failure messages to categorize them into failure types, (2) state in the specification that failure types are a form of classification and (3) provide examples of such failure types in Table I. A POSITA reading the claims, specification and prosecution history would thus be reasonably certain that the term simply refers to a classification of a failure message.

In response, Defendant notes that three of the thirty example failure types in Table I concern error messages created (1) before an email reaches the recipient's ISP or (2) after the recipient's ISP delivers the email to the recipient. Defendant argues these three entries create an impermissibly indefinite boundary between what is claimed and unclaimed with respect to failure type, because (1) Claim 1 of the Patents refers to classifying a "failure message . . . when the ISP is unable to deliver an email message" and (2) these three failure types are not the result of such an error message. This argument is unpersuasive. First, as the Federal Circuit has emphasized, "[i]t is a 'bedrock principle' of patent law that 'the *claims* of a patent define the invention to which the patentee is entitled the right to exclude.'" *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1253 (Fed. Cir. 2011) (emphasis added) (quoting *Phillips v. AWH Corp.*, 415 F.3d at 1312 (Fed. Cir. 2005)); *accord Ottah v. Nat'l Grid*, No. 19 Civ. 8289, 2020 WL 2543105, at *11 (S.D.N.Y. Apr. 27, 2020), *report and recommendation*

*adopted*, 2020 WL 2539075 (S.D.N.Y. May 19, 2020) (same).  It follows that while claims must be read in light of the specification, "it is improper to read a limitation from the specification into the claims."  *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004); *accord Cisco Sys., Inc. v. TQ Delta, LLC*, 928 F.3d 1359, 1364 (Fed. Cir. 2019).  The failure types in Table I need not exactly correspond to the type of failure message recited in Claim 1.

Second, that the specification lists example failure types corresponding to failure messages generated at all stages of email transmission does not render the definition of "failure type" -- "a classification of a failure message" -- unclear.  All of the failure types in Table I are classifications of failure messages.  Third, even if the content of Table I defined the scope of Claim 1, only reasonable certainty is required for definiteness, and Defendant identifies only three of the thirty entries in Table I as inconsistent with Claim 1.  A POSITA reading Table I could be reasonably certain of the meaning of "failure type" despite this inconsistency.  Finally, Defendant's arguments with respect to "failure type" depend on a construction of "failure message" as resulting from an ISP's failure to deliver an email to a recipient.  For the reasons given above, "failure message" is indefinite in the '439 Patent.

## IV.    CONCLUSION

For the reasons stated above, "failure message" is indefinite in the '439 Patent.  Because that term appears in all of the '439 Patent's asserted claims, those claims are invalid under 35 U.S.C. § 112.  *See Synchronoss Techs.*, 987 F.3d at 1368.  Accordingly, Plaintiff's claims for infringement of Claims 1, 2, 7, 11 and 12 in the '439 Patent in Count 4 of its Complaint are dismissed.  The remaining terms in controversy, as set forth in the parties' claim construction submissions, are construed as set forth above.

By July 20, 2021, the parties shall file a joint letter per the Individual Rules proposing next steps, including any proposal for summary judgment briefing.

Dated: July 6, 2021
  New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**