UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ZETA GLOBAL CORP.,
                        Plaintiff,

                20 Civ. 3951 (LGS)

        -against-

                ORDER

MAROPOST MARKETING CLOUD, INC.,
                        Defendant.
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      WHEREAS, Plaintiff Zeta Global Corporation and Defendant Maropost Marketing Cloud, Inc. separately move for reconsideration of the July 7, 2021 Opinion and Order on claim construction ("Claim Construction Order") (Dkt. No. 61).

      WHEREAS, general familiarity with the background of this case and the Claim Construction Order is assumed.

      WHEREAS, Local Civil Rule 6.3 provides that a motion for reconsideration shall "set[] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." S.D.N.Y. Loc. R. 6.3. "A motion for reconsideration should be granted only when [a party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted); *accord Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021). A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)) (internal

quotation marks omitted); *accord JLM Couture, Inc. v. Gutman*, No. 20 Civ. 10575, 2021 WL 2227205, at *5 (S.D.N.Y. June 2, 2021).  The standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."  *Analytical Survs.*, 684 F.3d at 52 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

WHEREAS, the Claim Construction Order held that "failure message" is indefinite in the '439 Patent because Claim 1 refers to a "failure message" generated "when the ISP is unable to deliver an email message to an email address associated with the ISP," while Claim 6 claims the same method as Claim 1, wherein the same failure message as Claim 1 -- that is, one generated when the ISP is unable to deliver a message to its associated email address -- is generated after delivery of the email message.[1]  The Claim Construction Order held that no person of ordinary skill in the art ("POSITA") could reasonably understand the scope of the claimed "failure message," which is "received by the sender when the ISP is *unable* to deliver an email to a recipient (2) *and* is created only *after* the email is delivered to the recipient."

WHEREAS, Plaintiff argues that the Claim Construction Order improperly added two limitations to Claim 6: that the failure message of that claim be generated (1) "only" after failed delivery (2) "to the recipient" of the email.  Reconsideration of this issue is improper, as the Claim Construction Order did not read additional limitations into Claim 6, but instead found it indefinite based on contradiction with the plain language of Claim 1.  Specifically, the Claim Construction Order noted that (1) "[b]y [Claim 1's] plain terms, such failure messages are the result of unsuccessful delivery from the ISP *to the intended recipient*," and (2) Claim 6 claims

---

[1] Claim 6 claims "[t]he method of claim 1, wherein the failure message comprises a failure message that is determined *after* delivery of the email message" (emphasis added).

the same method and failure message as specified in Claim 1.  The Claim Construction Order then held that "[w]hen properly read as incorporating Claim 1, Claim 6 . . . is contradictory and nonsensical," as the claimed failure message would have to be received when the ISP could not deliver an email to an associated recipient email address but be created after delivery of the email to that address.

In response, Plaintiff argues that while Claim 1 refers to the ISP being unable to deliver an email message to an associated email address, the successful "delivery" of Claim 6 could cover any delivery to an intermediate point in the process used to transfer an email message between the sender and the "email address associated with the ISP."  Plaintiff notes that these intermediaries could lie at any point in the email delivery chain.  This argument contemplates two possible scenarios.

First, assuming that the "delivery" of Claim 6 refers to delivery to some intermediary *before* the ISP with which the recipient email address is associated, or to the ISP itself,[2] Claim 6 fails to narrow the scope of Claim 1, as is required of a dependent claim.  35 U.S.C. § 112(d).  Claims 1 and 6 refer to a "failure message" received "when the ISP is unable to deliver an email message to an email address associated with the ISP."  It is plain from this language that in both Claim 1 and Claim 6, the email message has been successfully delivered to intermediaries preceding the ISP in the email delivery process, as well as the ISP.  Claim 6's addition of the limitation that the failure message be determined "after delivery of the email message" does not narrow Claim 1 in any way but instead simply restates it.  *See* 35 U.S.C. § 112(d) ("a claim in

---

[2] Although Plaintiff makes brief reference to the sender's ISP, the patent specification and claims consistently refer to the ISP associated with the recipient email address, and the parties do not argue that the claimed ISP is that associated with the sender.  Such argument would be unsuccessful, as the plain language of Claims 1 and 6 refers to delivery of an email message to an address associated with the claimed ISP -- that is, to the recipient's ISP.

3

dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed"); *Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*, 831 F.3d 1350, 1362 (Fed. Cir. 2016) ("A dependent claim that contradicts, rather than narrows, the claim from which it depends is invalid.").

The remaining scenario is one in which (1) pursuant to Claim 1, the sender receives a failure message due to the ISP being unable to deliver an email message to the associated email address and (2) pursuant to Claim 6, that failure message is received *after* some successful delivery of the email message to an intermediary point between the ISP and the associated recipient email address. This argument is unpersuasive.

First, construing "deliver" in Claim 6 as Plaintiff suggests -- to encompass a specific change of control between the ISP and an intermediary -- is improper on reconsideration, as Plaintiff forwarded a separate construction of "deliver" in claim construction briefing (plain meaning or a "change of control"). A motion for reconsideration is not an opportunity to present new legal theories. *See Analytical Survs.*, 684 F.3d at 52.

Second, even if reconsideration were proper, reading "deliver" in Claim 6 to refer to a change of control between an ISP and an intermediary does not render "failure message" definite in the '439 Patent. This reading runs counter to the plain language of Claim 1 and Claim 6, the latter of which encompasses Claim 1 by reference ("The method of claim 1, wherein . . ."). Both Claim 1 and Claim 6 thus claim the same "failure message" received when "*the ISP*" is unable to deliver an email message to an email address associated with the ISP. The claims, by their plain terms, do not refer to a failure message resulting from an unsuccessful transfer in control between some intermediary between the ISP and the email address. Plaintiff's argument that "delivery" refers to such intermediary entities is thus not supported by the plain claim language.

Instead, the plain language of the claims makes clear that the "delivery" of Claim 6 is congruent with the scope of delivery in Claim 1 -- that is, involving transfer of control of a message between the ISP and its associated email address, rather than between the ISP and an intermediary. As the Claim Construction Opinion noted, Claim 1 plainly states that the message is successfully sent to the recipient's ISP and that the ISP is then "unable to deliver it to [the recipient's] email address." Claim 6 then notes that the same failure message -- resulting from the ISP's failure to deliver to the email address -- may be generated after "delivery." The only indication in the claim language as to the scope of "delivery" in Claim 6 arises from the "failure message" given antecedent basis in Claim 1, which makes plain that the claims are contemplating delivery from ISP to the associated email address. Nor is "delivery" in Claim 6 preceded by the indefinite articles "a" or "any," which would differentiate the scope of that term from the type of delivery set forth in Claim 1.

In response, Plaintiff first notes that a POSITA could understand the email delivery process to include intermediaries between the ISP and the email address. That is true but beside the point, as a POSITA armed with that knowledge and reading the claims' plain language would understand that the only failure in delivery giving rise to the "failure message" contemplated by the claims results from a failure to transfer control from the recipient's ISP to the email address, rather than from an intermediary not identified in the claim language.

Second, Plaintiff notes that the '439 Patent's specification briefly states that an ISP may successfully receive the email message but a failure may occur in delivery from the ISP to the associated email address. From that short discussion, Plaintiff suggests that a POSITA would conclude that the "delivery" in Claim 6 refers to a separate type of delivery than that contemplated in Claim 1 -- that Claim 6 refers to a delivery to an intermediary between the ISP

5

and its associated email address.  This argument is unpersuasive, as the portions of the specification cited by Plaintiff do not discuss such intermediaries.  The specification's recognition that a message may be successfully delivered to the ISP and subsequently not delivered to the associated email address does not change the plain language of Claims 1 and 6 -- which refer to the ISP failing to deliver to that email address -- to encompass a scenario where (1) the message is successfully delivered to an intermediary between the ISP and the email address and (2) the message is ultimately never delivered to the email address.  A POSITA reading that language would likewise not understand Claims 1 and 6 to refer to such intermediary entities.

WHEREAS, the Claim Construction Order held that "failure message" is not indefinite in the '475 Patent, because Claim 1 covers "receiving . . . a failure message . . . as a result of a failure by the ISP to deliver an email message to an email address associated with the ISP," while Claim 9 adds the limitation that the failure message is "classified after delivery of the email message."  Because the parties acknowledged that an email message might (1) initially fail delivery, causing a failure message to be generated and classified, and (2) then be successfully delivered, the Claim Construction Order concluded that the contradiction in claim language rendering "failure message" indefinite in the '439 Patent was not present in the '475 Patent.

WHEREAS, Defendant argues that "failure message" is also indefinite in the '475 Patent.  Defendant first cites authority stating that if an applicant made a disclaimer of claim scope to the United States Patent and Trademark Office ("USPTO") during patent prosecution, then courts generally presume that disclaimer applies in construing claim terms in the same or related patents.  Defendant primarily relies on *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1343-45 (Fed. Cir. 2015), which examined inconsistent definitions put forward by the patentee

for the same term across prosecution of multiple patents, each in response to USPTO indefiniteness rejections, and held that those inconsistent definitions contributed to a finding of indefiniteness. By contrast, Defendant identifies no such inconsistent statements in this matter, but notes that the '439 Patent "is part of the prosecution history of the '475 Patent."

Courts "presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning." *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003); *accord Paice LLC v. Ford Motor Co.*, 881 F.3d 894, 904 (Fed. Cir. 2018). Defendant identifies no authority stating that this presumption requires a court to wholly disregard the normal claim construction process in construing a related patent, particularly where the term is indefinite in one patent solely due to an inconsistency in the plain language of the claims. As outlined in the Claim Construction Order, the first step of the claim construction process requires consideration of the patent's claims, followed by consideration of the specification and prosecution history, evaluated from the point of view of a POSITA as of the patent's priority date.

The Claim Construction Order's indefiniteness determination rested solely on the plain language of the claims, concluding that "failure message" was indefinite in the '439 Patent because of the contradictory treatment of that term between Claims 1 and 6 of the '439 Patent. By contrast, construction of "failure message" in the '475 Patent requires the Court to begin with the claims of the '475 Patent, where such inconsistency is absent. A POSITA reviewing the claim language would not face the same uncertainty as in the '439 Patent. While the inconsistent claim language of the '439 Patent would inform the POSITA's determination as a part of the '475

Patent's prosecution history, it would carry little weight given the absence of that inconsistency in the '475 Patent's claim language.[3]

WHEREAS, Defendant argues the Claim Construction Order erroneously construed "failure type" to mean "a classification of a failure message." Because "failure message" is indefinite in the '439 Patent, "failure type" is likewise indefinite in the '439 Patent. Accordingly, it is hereby

**ORDERED** that Plaintiff's motion for reconsideration is **denied**. It is further

**ORDERED** that Defendant's motion for reconsideration is **denied**. Defendant's application to hold the term "failure type" indefinite in the '439 Patent is **granted**, because "failure type" is construed to mean "a classification of a failure message," and the term "failure message" is indefinite in the '439 Patent. It is further

**ORDERED** that by **August 24, 2021**, the parties shall meet and confer and submit a proposed briefing schedule for any summary judgment motion on patent validity.

The Clerk of Court is respectfully directed to close the entries at docket numbers 62 and 68.

Dated: August 19, 2021
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

---

[3] As to the specification, Defendant briefly argues that "failure message" is likewise indefinite in both the '439 and '475 Patents because the specification briefly notes that a failure message may be generated before or after delivery (construed to mean "change of control") of an email. That observation does render "failure message" indefinite in the '475 Patent, as the inconsistency giving rise to indefiniteness in the '439 Patent arose from the fact that Claim 6 contradicted Claim 1 by stating that the *claimed* failure message -- one received by the sender when the ISP is unable to deliver to the recipient -- was generated after delivery.