UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
ZETA GLOBAL CORP.,                                          :
                                        Plaintiff,          :
                                                            :    20 Civ. 3951 (LGS)
                    -against-                               :
                                                            :    **OPINION AND ORDER**
MAROPOST MARKETING CLOUD, INC.,                             :
                                        Defendant.          :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Zeta Global Corporation alleges that Defendant Maropost Marketing Cloud, Inc. infringes U.S. Patent No. 8,108,475 ("Methods and apparatus for categorizing failure messages that result from email messages") (the "'475 Patent"). Defendant moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on Plaintiff's patent infringement cause of action, the sole remaining cause of action in this case. Defendant also filed a pre-motion letter in anticipation of moving for sanctions under Federal Rule of Civil Procedure 11. For the reasons stated below, Defendant's motion for judgment on the pleadings is granted, and Defendant's motion for a conference to discuss its Rule 11 motion is denied.

I.   BACKGROUND

Plaintiff and Defendant are online marketing companies that send promotional emails. The U.S. Patent and Trademark Office issued the '475 Patent on January 31, 2012. On April 17, 2017, the '475 Patent was assigned to Plaintiff. The '475 Patent claims methods by which a sender of emails can classify failure messages received from Internet Service Providers ("ISP") in response to failures in the process by which an email is delivered to a recipient. Defendant argues, and Plaintiff does not dispute, that Claim 1 of the of the '475 Patent is representative. Claim 1 recites:

> 1. A computer-implemented method for managing failure messages for email messages, the method comprising:
>
> > receiving, in a computer, a failure message from an Internet service provider (ISP) as a result of a failure by the ISP to deliver an email message to an email address associated with the ISP;
> >
> > classifying, using a processor of the computer, a failure type of the failure using the failure message; and
> >
> > determining, using the processor, whether the email address is invalid based upon the failure type and based upon the associated ISP.

Plaintiff commenced this action on May 21, 2020, asserting the following six causes of action against Defendant: (1) breach of contract; (2) tortious interference with a contractual relationship; (3) declaratory judgment regarding Defendant's contractual obligations; (4) patent infringement of U.S. Patent No. 7,536,439 (the "'439 Patent"); (5) patent infringement of the '475 Patent and (6) patent infringement of U.S. Patent No. 10,257,672 (the "'672 Patent").  On April 28, 2021, the Court granted Defendant's partial motion to dismiss the contract claims (Counts I-III).  The parties proceeded to claim construction and during that process, Plaintiff withdrew its infringement claim for the '672 Patent.  Following the parties' presentations on their proposed constructions of two claim terms -- "deliver" and "failure type" -- the Court issued an Opinion and Order on claim construction (the "Claim Construction Order") on July 7, 2021.  The Claim Construction Order construed "deliver" as "change of control" and "failure type" as "a classification of a failure message."  The Claim Construction Order also dismissed Plaintiff's claims for infringement of the '439 Patent, leaving infringement of the '475 Patent as the sole remaining claim.

## II. LEGAL STANDARDS

As a threshold matter, the law of the Federal Circuit applies to patent issues, while the law of the regional circuit -- in this case, the Second Circuit -- applies to non-patent issues. *See, e.g.*, *Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 19 F. 4th 1315, 1323 (Fed. Cir. 2021) ("We apply regional circuit law to our review of a dismissal of a complaint for lack of standing unless the issue is unique to patent law and therefore exclusively assigned to the Federal Circuit.").

### A. Rule 12(c)

The standard for granting a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is identical to the standard for a Rule 12(b)(6) motion to dismiss. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021). The Court accepts as true all of the non-moving party's well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *Id*. To survive a motion for judgment on the pleadings, "the plaintiff's complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bench v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). Here, the parties agree that the '475 Patent is considered part of the pleadings.

B. **Patent Eligibility**

Under the Patent Act, all patents are presumed valid. 35 U.S.C. § 282(a). A patent may be invalid because it fails to claim patent-eligible subject matter as defined by § 101 of the Patent Act. "Patent eligibility under § 101 is a question of law that may contain underlying questions of fact." *CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1095 (Fed. Cir. 2021). "[P]atent eligibility can be determined on the pleadings under Rule 12(c) when there are no factual allegations that, when taken as true, prevent resolving the eligibility question as a matter of law." *Id.* at 1095-1096 (internal quotation marks omitted). "[N]ot every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1314 (Fed. Cir. 2021) (internal quotation marks omitted). This inquiry "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *Id.* (internal quotation marks omitted).

III. **DISCUSSION**

For the reasons discussed below, Defendant's motion is granted because the '475 Patent is invalid for failure to claim patent-eligible subject matter. Section 101 of the Patent Act defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. "The Supreme Court has held that 'this provision contains an important implicit exception: [l]aws of nature, natural phenomena, and abstract ideas are not patentable.'" *PersonalWeb Techs.*, 8 F.4th at 1314 (quoting *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014)). "An inventive concept that transforms the abstract idea into a patent-eligible invention must be significantly

4

more than the abstract idea itself, and cannot simply be an instruction to implement or apply the abstract idea on a computer." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016) (citing *Alice*, 573 U.S. at 222–23).

To determine whether the subject matter of a patent is eligible to be patented, a court applies the two-step framework outlined in *Alice* by the Supreme Court. *Id.* at 1347. At step one, a court "'determine[s] whether the claims at issue are directed to a patent-ineligible concept,'" such as an abstract idea. *Id.* (quoting *Alice*, 573 U.S. at 218). At step two, a court "'consider[s] the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application.'" *Id.* (quoting *Alice*, 573 U.S. at 217). "Step two is 'a search for an inventive concept -- *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'" *CosmoKey Sols.*, 15 F.4th at 1096 (quoting *Alice*, 573 U.S. at 217-18).

### A. *Alice* Step One: Directed to a Patent-Ineligible Concept

The '475 Patent fails step one of the *Alice* framework because the patent is directed to an abstract idea. The first step of *Alice* requires the court to analyze the claims "in their entirety to ascertain whether their character as a whole is directed to excluded subject matter," such as an abstract idea. *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. 2021) (internal quotation marks omitted). Abstract ideas include "fundamental economic practice[s] long prevalent in our system of commerce . . . including, longstanding commercial practice[s] and method[s] of organizing human activity . . . ." *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016) (internal quotation marks omitted).

Claim 1 is directed to receiving and classifying a failure message into a failure type, and deciding whether to take certain action, such as invalidating an email address, based on the failure type. As to the "receiving" aspect of the claim, the Federal Circuit has affirmed at least one court's invalidation of a patent that claimed a method of electronically transmitting a failure message. *See GoDaddy.com LLC v. RPost Commc'ns Ltd.*, No. 14 Civ. 126, 2016 WL 3165536, at *26 (D. Ariz. June 7, 2016), *aff'd*, 685 F. App'x 992 (Fed. Cir. 2017). Concluding that "collecting and providing information that a message was not delivered" was an abstract idea, the District Court reasoned that the transmission of failure messages "ha[d] been implemented by standard SMTP 'bounce' code for dozens of years," and that the "problem purportedly solved" by the patent "long permeated the pre-Internet, analog world . . . ." *Id.* at *27. Accordingly, mere receipt of a failure message is not patent-eligible.

As to the "classifying" aspect of the claim -- i.e., categorizing failure messages by failure type and determining whether an email address should be invalidated based on the failure type and information associated with the sender -- these claims describe mental processes that have "long permeated the pre-Internet, analog world." *Id.* The Federal Circuit's decision in *Intell. Ventures I*, is particularly instructive here, as the court concluded that an email filtering system, which claimed "receiving e-mail (and other data file) identifiers, characterizing e-mail based on the identifiers, and communicating the characterization," is an abstract idea. 838 F.3d at 1313. The court likened the methodology to the "long-prevalent practice for people receiving paper mail to look at an envelope and discard certain letters, without opening them, from sources from which they did not wish to receive mail based on characteristics of the mail." *Id.* at 1314. Similarly, the '475 Patent involves classifying messages based on certain characteristics and deciding whether certain recipient addresses should be invalidated based on characteristics of the

6

message -- longstanding processes that are analogous to processes for categorizing and managing physical mail that is not delivered.

Plaintiff argues that Claim 1 is not abstract because it is directed to solving a specific technological problem with a technological solution. *See CosmoKey Sols.*, 15 F.4th at 1100. In its Opposition, Plaintiff identifies two technological problems: (1) "that ESPs [email service providers] had no way of categorizing the failure messages they received," and (2) that "ISPs [were] rejecting emails sent by ESPs." Plaintiff contends that the '475 Patent provides a solution by allowing ESPs to communicate with ISPs to determine the reasons for delivery failure and providing a method for categorizing failure messages. Plaintiff's asserted solution is not supported by the patent nor is it alleged in the Complaint. None of the claims reference a communication with ISPs for the purpose of determining the reason for failure deliverability. The claimed communication with an ISP is "receiving, in a computer, a failure message from an Internet service provider (ISP) as a result of a failure by the ISP to deliver an email message to an email address associated with the ISP." Receiving an email failure message in this fashion is a matter of prior art, and Plaintiff does not suggest otherwise. Although an email sender may be an ESP, the claims are not limited to, nor do they focus on emails sent by ESPs. The focus of the patent is categorization; the patent in its own words is drawn to "methods and apparatus for categorizing failure messages received from email messages that are sent" to determine whether an email address is invalid. The patent, taken as a whole, cannot reasonably be interpreted to claim a system or technology facilitating communication between ESPs and ISPs for the purpose of identifying failure type.

The cases Plaintiff cites in support of its argument that the '475 Patent solves a technological problem are distinguishable from the instant case. Relying on *DDR Holdings, LLC*

*v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), Plaintiff argues that the '475 Patent is not directed to an abstract idea because it is rooted in a technological problem. Unlike the patents at issue in *DDR Holdings*, which were directed at solving "a challenge particular to the Internet" relating to the retention of website traffic, the problem here -- failed mail delivery -- is not specific to the internet. *Id.* at 1257. As the court in *DDR Holdings* cautioned, "not all claims purporting to address Internet-centric challenges are eligible for patent." *Id.* at 1258*; cf. InsideSales.com, Inc. v. SalesLoft, Inc.,* No. 2:16 Civ. 859, 2017 WL 2559932, at *2-3 (D. Utah June 13, 2017) (concluding that "[t]he functionalities claimed in the patents were not imaginable before the Internet" and that the inventions provided internet-based solutions to "solve a problem unique to the Internet," i.e., "finding out whether a user opened an email or clicked on a link within the email").

Plaintiff also cites *Sophos Inc. v. Rpost Holdings, Inc.*, Nos. 13 Civ. 12856, 14 Civ. 13628, 2016 WL 3149649, at *12 (D. Mass. June 3, 2016), as an example of a court finding email technology to be patent-eligible. The relevant patents in *Sophos* were subsequently invalidated by the Arizona District Court's decision in *GoDaddy.com*, which was affirmed by the Federal Circuit. *GoDaddy.com*, 2016 WL 3165536, at *26, *aff'd*, 685 F. App'x 992.

**B. *Alice* Step Two: Inventive Concept**

The '475 Patent also fails step two because it does not "contain an inventive concept" that renders it patent-eligible. *Intell. Ventures I*, 838 F.3d at 1315 (internal quotation marks omitted). An inventive concept is "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *PersonalWeb Techs.*, 8 F.4th at 1318 (internal quotation marks omitted). This second step "is satisfied when the claim limitations involve more than performance of well-

understood, routine, and conventional activities previously known to the industry." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (internal quotation marks omitted). "Claims that 'amount to nothing significantly more than an instruction to apply [an] abstract idea . . . using some unspecified, generic computer' and in which 'each step does no more than require a generic computer to perform generic computer functions' do not make an abstract idea patent-eligible." *Intell. Ventures I*, 838 F.3d at 1315 (quoting *Alice*, 573 U.S. at 225-226).

Here, Claim 1 "merely automate[s] or otherwise make[s] more efficient traditional . . . methods" of categorizing email failure messages. *PersonalWeb Techs.*, 8 F.4th at 1319 (internal quotation marks omitted). "[P]recedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea." *Id.* (internal quotation marks omitted). Neither the Complaint nor the Patent suggests that the methodology improves the well-understood conventional activity of categorizing email failure messages, apart from speed and efficiency. Claim 1 is in substance an instruction to accomplish the categorization using a generic computer to perform generic computer functions. The claims refer generally to a "computer-implemented method," and the specification provides that "[t]he present invention may be implemented only in hardware, or only in software, or using combinations thereof."

Plaintiff argues that the '475 Patent provides the ability for an ESP to communicate with ISPs for the purpose of identifying and categorizing failure messages, and that such communication was neither routine nor conventional in the industry at the time of filing. Plaintiff further contends that the '475 Patent claims non-standard email-service technology. "To save a patent at step two, an inventive concept must be evident in the claims." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017); *see also*

*Berkheimer*, 881 F.3d at 1369 (holding that certain patents were ineligible because the claim "does not recite any of the purportedly unconventional activities disclosed in the specification"). As discussed above, Plaintiff's characterization of this asserted technology is unsupported by the language of Claim 1. Claim 1 cannot be interpreted to include a system of communication between an ESP and ISP for the purpose of identifying a failure type, nor is there any indication that Claim 1 involves non-standard email-service technology.

### IV.     LEAVE TO AMEND

A "court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[D]istrict courts may deny leave to amend 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Cohen v. Am. Airlines, Inc.*, 13 F.4th 240, 247 (2d Cir. 2021) (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014)). Plaintiff requests that it be granted leave to amend in the event Defendant's motion is granted, and filed a Proposed Amended Complaint ("PAC") with its Opposition.[1] Here, leave to amend is futile because the new allegations in the PAC describing the technology and innovation of the '475 Patent are not supported by the patent itself. At the pleadings stage, "a court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (internal quotation marks omitted). Leave to amend is denied.

---

[1] On April 22, 2022, after this motion was fully briefed, Plaintiff attempted to file an amended complaint, which was rejected by the Clerk's Office because it did not include an order granting permission to file the pleading or Defendant's written consent. The amended complaint appeared to remove causes of actions that were previously dismissed but did not add any substantive allegations that could cure the deficiencies described in this Opinion and Order.

V.      RULE 11 SANCTIONS

Defendant's motion for a conference to discuss its anticipated Rule 11 motion is denied. Defendant argues that Plaintiff made baseless factual assertions and frivolous claims regarding the '475 Patent in its Opposition. "With respect to factual contentions, sanctions may not be imposed unless a particular allegation is utterly lacking in support," and "objectively unreasonable." *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014); *accord Sacerdote v. Cammack Larhette Advisors, LLC*, No. 17 Civ. 8834, 2022 WL 2078012, at *5 (S.D.N.Y. June 8, 2022). "Courts typically look for statements which rise to the level of direct falsehoods before they find that sanctions are warranted pursuant to Rule 11(b)(3)." *Bongiorno v. Baquet*, No. 20 Civ. 7288, 2021 WL 4311169, at *23 (S.D.N.Y. Sept. 20, 2021) (internal quotation marks omitted). "With respect to legal contentions, the operative question is whether the argument is frivolous, i.e., the legal position has no chance of success, and there is no reasonable argument to extend, modify or reverse the law as it stands." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (internal quotation marks and alteration omitted); *accord Weiss v. David Benrimon Fine Art LLC*, No. 20-3842, 2021 WL 6128437, at *2 (2d Cir. Dec. 28, 2021) (summary order). "[E]ven when a district court finds a violation of Rule 11, the decision whether to impose a sanction for a Rule 11(b) violation is . . . committed to the district court's discretion." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (internal quotation marks and alteration omitted); *accord United States v. Lax*, No. 18 Civ. 4061, 2022 WL 980096, at *4 (E.D.N.Y. Mar. 31, 2022).

Although Plaintiff's characterization of the '475 Patent is a stretch, the statements do not rise to the level of direct falsehoods utterly lacking in support. Likewise, Plaintiff's legal arguments cannot be characterized as a legal position with "no chance of success." *Star Mark*

*Mgmt., Inc.*, 682 F.3d at 177.  Although the '475 Patent cannot reasonably be interpreted to claim ESP technology as Plaintiff describes it, there is some -- albeit very limited and ultimately unpersuasive -- ground for its arguments that the patent's technology allows "entities [to] correspond with the ISPs to determine the cause of the failure."  For these reasons, Defendant's motion for a conference is denied.

## VI. CONCLUSION

For the reasons stated above, Defendant's motion for judgment on the pleadings is **GRANTED**.  Defendant's request for a conference to pursue a motion for Rule 11 sanctions is **DENIED**.  The Clerk of Court is respectfully directed to close all outstanding motions, cancel all conferences and close the case.

Dated: July 7, 2022
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE